UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
Greenbelt Division

In Re: Case No. 15-26033, 24-00007

Gregory B. Myers, Chapter 7

Debtor. Greenbelt, Maryland
Thursday, July 3, 2025

: : : : : : : : : : : : : : :

TRANSCRIPT OF HEARING ON
17 APPLICATION TO COMPROMISE CONTROVERSY FILED BY DEFENDANT ROGER SCHLOSSBERG, 19 OBJECTION FILED BY DEBTOR GREGORY B. MYERS, 20 MOTION FOR MISCELLANEOUS RELIEF FILED BY DEFENDANT ROGER SCHLOSSBERG, 22 SUPPORT DOCUMENT FILED BY DEBTOR GREGORY B. MYERS, 23 RESPONSE FILED BY DEBTOR GREGORY B. MYERS, 24 RESPONSE FILED BY DEFENDANT ROGER SCHLOSSBERG, 1051 OBJECTION TO CLAIM FILED BY DEBTOR GREGORY B MYERS, 1052 OBJECTION TO CLAIM FILED BY DEBTOR GREGORY B MYERS, 1053 OBJECTION TO CLAIM FILED BY DEBTOR GREGORY B MYERS, 1060 OPPOSITION FILED BY INTERESTED PARTY BRIAN KING, INTERESTED PARTY CRISTINA KING)
BEFORE THE HONORABLE MARIA ELLENA CHAVEZ-RUARK
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

For Chapter 7 Trustee Roger Schlossberg: Frank J. Mastro, Esq.
Roger Schlossberg, Esq.
SCHLOSSBERG & MASTRO
18421 Henson Boulevard
Suite 201
Hagerstown, MD 21742

For Brian King Maurice Belmont Verstanig, Esq.
THE VERSTANDIG LAW FIRM, LLC
9812 Falls Road
#114-160
Potomac, MD 20854

For U.S. Trustee: L. Jeanette Rice
OFFICE OF U.S. TRUSTEE
6305 Ivy Lane
Suite 600
Greenbelt, MD 20770

Audio Operator: JENNIFER WHITFIELD
301-344-3965

Transcript prepared by: ESCRIBERS
7227 North 16th Street
Suite #207
Phoenix, Arizona 85020
(800)257-0885

Proceedings recorded by electronic sound recording; transcript produced by transcription service.

Greenbelt, MD - July 3, 2025

THE CLERK: Calling the case of Gregory B. Myers, case number 15-26033. The matters -- we're here for oral ruling regarding the matters of docket entry 1051, objection of claim number 22 filed by the Debtor, docket entry 1052, objection to claim number 23 filed by the Debtor, docket entry 1053, objection to claim number 21 filed by the Debtor, and docket entry 1060, opposition to objections filed on behalf of the King parties.

We're also here for adversary number 24-00007, King et al vs. Schlossberg. The matters before the Court are docket entry 17, application of compromise controversy filed on behalf of the defendant, docket entry 19, preliminary objection of Trustee's application to compromise controversy filed by the Debtor, docket entry 22, supplement to preliminary objection filed by the Debtor, docket entry 20, motion to strike Debtor's objection filed on behalf of the defendant, docket entry 23, response to motion filed by the Debtor, and docket entry 24, response to opposition filed on behalf of the defendant.

Starting with counsel for the plaintiffs and the adversary, please identify yourself and client for the record.

MR. VERSTANDIG: Good morning, Your Honor. Maurice Verstandig, on behalf of Brian King, Cristina King, and the Cristina and Brian King Children's Trust. I am joined today

by Brian King, who is simply passively listening over Zoom.

THE COURT: Good morning.

MR. MASTRO: Good morning, Your Honor. Frank Mastro, on behalf of Roger Schlossberg, the Chapter 7 Trustee and the defendant in the adversary case.

THE COURT: Good morning.

MR. SCHLOSSBERG: Good morning, Your Honor. Roger Schlossberg, Chapter 7 Trustee, counsel for Trustee.

THE COURT: Good morning.

MR. MYERS: Good morning. Good morning, Your Honor. Greg Myers, Debtor, third-party plaintiff. And I note that it says there's ten participants on this Zoom, but I haven't heard of ten different people. Thank you.

THE COURT: Good morning.

MS. RICE: Good morning again, Jeanette Rice, office of the U.S. Trustee.

THE COURT: And good morning to you, Ms. Rice.

So the Court offers its deepest apologies. We've had a major technical failure on our end and none of the Court's ruling was recorded. The equipment is still not working, so the Court is recording this using the Zoom recording function. And what the Court will do is the Court will have a transcript of its ruling prepared and docketed on the docket for the convenience of the parties. And so if any of the parties would not -- would like to disconnect and not stick around for

the ruling, you're welcome to disconnect. And the Court will excuse you from the ruling.

If you're willing to stick around for the Court's ruling, you heard most of it. The Court will cover that again. And again, I offer my sincerest apologies.

MR. MYERS: Your Honor, I don't understand. So is there a recording of the prior ruling?

THE COURT: Mr. Myers, as I just stated, the recording equipment failed. There is no recording of that ruling. I am going to start over at the beginning and give the ruling all over again, and the Court will prepare a transcript of its ruling and put that on the docket for the benefit of the parties. So if anyone does not want to stay on for the Court's ruling, the Court will excuse their attendance.

MR. MYERS: Uh-huh.

THE COURT: All right. I'm going to go ahead and get started. Before the Court is a motion to approve a settlement filed by the Chapter 7 Trustee in the Debtor's main bankruptcy case, and the Debtor's objections to three claims filed in his bankruptcy case. The Court will overrule the Debtor's objections to the settlement motion, grant the settlement motion, and approve the settlement motion, and approve the settlement. The claims are being withdrawn in connection with the settlement. So the objections to those three claims will

be overruled as moot.

Notwithstanding the Debtor's repeated mischaracterizations of the underlying facts, the material facts here are not disputed. The Court adopts the findings of fact and conclusions of law set forth in three of its prior rulings. The first is its memorandum opinion issued on September 28th, 2018, in the adversary proceeding styled United States Trustee v Myers, Adversary Number 17-00193 at docket number 94 in that adversary proceeding. The second is the Court's memorandum opinion issued on December 11th, 2023, the Chapter 13 case filed by the Debtor's wife, Barbara Ann Kelly, case number 23-12700 at docket number 106. And the third is the court's order granting motion for approval of proposed compromise and settlement issued on December 11th, 2023, in the Debtor's main bankruptcy case, case number 15-26033, at docket number 1029.

In the interest of time, the Court will not restate all of its factual findings and legal conclusions, but adopts the findings and conclusions in those three decisions. The Court summarizes its prior findings of facts and makes additional findings of facts based on the evidence presented at the hearing on June 30th and July 1st as follows: The Debtor filed a voluntary Chapter 11 bankruptcy petition on November 18th, 2018. Excuse me, 2015. At the time that he filed the case, there was a trust that has been referred to in

these proceedings as Serv Trust. Serv Trust was created by the Debtor's mother for the benefit of the Debtor's children. And at some point in time, the Debtor was a co-Trustee of the Serv Trust trust.

The Debtor testified at his meeting of creditors on February 1st, 2016, that Serv Trust has a 50 percent interest in a Maryland limited liability company called 6789 Goldsboro LLC, which owns a parcel of residential real property located in Montgomery County. I will refer to 6789 Goldsboro LLC as Goldsboro LLC, or Goldsboro, or the LLC. On February 22nd, 2017, after an evidentiary hearing, this Court entered an order granting the motion of the United States Trustee to convert the Debtor's case from a Chapter 11 proceeding to a Chapter 7 proceeding. At that time, Mr. Schlossberg was appointed as the Chapter 7 Trustee of the Debtor's bankruptcy estate.

There are three pieces of litigation, in addition to the instant adversary proceeding, that are most relevant to the Trustee's settlement motion. First, on September 14th, 2017, Brian King, Cristina King, and the Cristina and Brian King Children's Trust filed a complaint for declaratory judgment against Serv Trust in the Circuit Court for Montgomery County in the case styled King et al v. Serv Trust et al, case number 436977-B. I will refer to Mr. King, Mrs. King, and their trust as the King parties, and I will refer to

this case as the King declaratory judgment case.

The complaint in the King declaratory judgment case sought, among other things, a judgment declaring that the King parties could direct Goldsboro LLC to redeem the interest of Serv Trust in the LLC in exchange for previous consideration. Excuse me, in exchange for previous consideration paid based on an appraisal conducted of the Goldsboro property pursuant to the operating agreement governing the LLC and a judgment declaring that Serv Trust's interest in Goldsboro, LLC has been redeemed.

Second, on January 24th, 2018, Goldsboro, LLC filed a complaint against Serv Trust in the Circuit Court for Garrett County in the case styled 6789 Goldsboro, LLC v. Serv Trust et al, case Number C-11-CV-18-000018. I will refer to this case as the Goldsboro breach of contract case. The complaint in this case asserted claims for breach of a promissory note and promissory estoppel. The Circuit Court for Garrett County transferred the Goldsboro breach of contract case to the Circuit Court for Montgomery County on July 24th, 2018, and the Circuit Court for Montgomery County assigned case number 451611-V to the case and consolidated it with the King declaratory judgment case. I will refer to the consolidated case as the State Court case, and to the Circuit Court for Montgomery County as the State Court.

And third, on October 29th, 2018, Goldsboro, LLC

filed a complaint for declaratory judgment against the Debtor Seve Trust and the Trustee in this Court, thereby commencing adversary number 18-00407, which I will refer to as the Goldsboro adversary proceeding. The complaint in the Goldsboro adversary proceeding alleged that the King parties collectively are the other owner of Goldsboro, LLC, and exercise their right to redeem Serv Trust interest in the LLC. The complaint sought a judgment from this Court declaring that Serv Trust is the alter ego of the Debtor, and that the assets and liabilities of Serv Trust are assets and liabilities of the Debtor, subject to administration by the Trustee. Goldsboro, LLC also requested an order from this Court stating -- excuse me, staying the State Court case based on Goldsboro LLC's assertion that Serv Trust is the alter ego of the Debtor.

On January 30th, 2019, the Court entered an order abstaining from exercising jurisdiction over the claims asserted in the Goldsboro adversary proceeding. The abstention order determined that the State Court could determine whether Serv Trust is the alter ego of the Debtor in connection with the State Court case, and if such a determination was made, then the parties to the State Court case could come back to this Court to determine a course of action. On the other hand, if the State Court determined that Serv Trust is not the alter ego of the Debtor, then the State

Court case would have little impact on the Debtor's bankruptcy case, and there would be no basis for the Court to exercise jurisdiction over the Goldsboro adversary proceeding.

The abstention order also stated that the State Court could determine whether the automatic stay of Section 362-A applied to the State Court case. After entry of the abstention order, the King parties filed an amended complaint in the King declaratory case to include a request for declaratory judgment that Serv Trust is the alter ego of the Debtor. The consolidated State Court case was scheduled for trial on January 3rd, 2023. At approximately 4:30 p.m. on Friday, December 30th, 2022, just minutes before the close of business, on the last business day before trial, the Debtor filed a notice of removal purporting to remove the action to the United States Bankruptcy Court for the Middle District of Florida, where the Debtors later filed and separate Chapter 13 case was pending at the time.

The King parties immediately filed an emergency motion to remand, alleging various infirmities and inherent bad faith associated with the Debtor's attempted removal at the 11th hour, on the morning of January 3rd, 2023, the Florida Bankruptcy Court remanded the case back to the Circuit Court for Montgomery County in time to allow for the trial of the State Court case to proceed as scheduled. And so on January 3rd, 2023, the State Court case proceeded to trial as

scheduled, and the State Court determined that Serv Trust is the alter ego of the Debtor. The State Court reduced its oral ruling from the January 3rd, 2023 trial to a written order entered on January 12th, 2023, and I will refer to that order as the alter ego order.

The alter ego order determined, and I quote, Serv Trust is, and as of November 18th, 2015, which was the petition date, was the alter ego of Gregory B. Myers pursuant to Maryland law, end quote. The alter ego order further determined, and I quote, Serv Trust is a disregarded entity, being the alter ego of Mr. Myers, end quote. The alter ego order entered judgment in favor of the King parties on the alter ego claim, which was Count II of a two count complaint and enter judgment in favor of the King parties on all claims set forth in Serv Trust's counterclaim.

Because it found that the Debtor is the alter ego of Serv Trust, the alter ego order further provided that all further proceedings in the case were stayed pursuant to Section 362 of the Bankruptcy Code, pending the removal of the State Court case to this Court, the granting of relief from stay, or the occurrence of other events terminating the automatic stay. The stayed proceedings included the King parties' claim in Count I, seeking a declaratory judgment regarding the alleged redemption of Serv Trust's interest in Goldsboro, LLC, as well as Goldsboro, LLC's separate claim

against Serv Trust in the Goldsboro breach of contract case.

Goldsboro, LLC's claim against the Debtor in the Goldsboro breach of contract case had already been stayed at that point. The Trustee testified that the King parties later dismissed Count I of the complaint in the King declaratory judgment case. The Trustee maintains that, based on the alter ego order, all claims against Serv Trust must be construed as claims against the Debtor's bankruptcy estate, and Serv Trust assets are property of the Debtor's bankruptcy estate pursuant to Section 541-A, with those assets subject to administration by the Trustee as the legal representative of the bankruptcy estate under Section 323-A.

On February 7th, 2023, the Trustee filed a motion for approval of proposed compromise and settlement with the King parties, which the Court will refer to as the Settlement Procedures Motion. That motion appears at docket number 1005 in the Debtor's bankruptcy case. This motion sought approval of a procedural mechanism for resolving the remaining claims presented in the King declaratory judgment case regarding the asserted redemption of Serv Trust's interest in Goldsboro, LLC. Pursuant to an agreement by the parties and the Trustee, the King parties and the Trustee would jointly file a stipulation in the State Court case, pursuant to which the King parties would dismiss, without prejudice, the redemption claim against Serv Trust. In consideration of the dismissal,

the Trustee would agree to toll the statute of limitations applicable to the redemption claim nunc pro tunc to September 14th, 2017, the date the King parties filed the declaratory judgment case in the State Court. And the King parties and the Trustee would endeavor in good faith to negotiate a resolution to the redemption claim. And if negotiations were not successful, the King parties would refile the redemption claim as an adversary proceeding in this Court within 30 days.

In support of the settlement procedures motion, the Trustee argued that the proposed settlement procedures are in the best interest of the bankruptcy estate and all interested parties. The Trustee said the proposed procedures would afford him time to become familiar with the redemption claim and potentially negotiate a resolution of the same, which could yield significant benefit and significant income for the bankruptcy estate. In the event a resolution could not be reached, the Trustee reiterated that the redemption claim would be relitigated in this Court, which was the bankruptcy estate's preferred forum.

The Debtor filed a motion to strike the settlement procedures motion, and that motion to strike appears at docket number 1010 in the Debtor's main bankruptcy case. The Court treated the motion to strike as an opposition to the settlement procedures motion. In his motion to strike, the Debtor made many of the same arguments that he made in

opposition to the Trustee's pending settlement motion. On December 11th, 2023, this Court entered a 21-page order at docket number 1029, overruling the Debtor's objections, granting the settlement procedures motion, and approving the settlement procedures proposed by the Trustee.

Subsequent settlement negotiations between the King parties and the Trustee failed to yield a settlement. Consequently, on January 11th, 2024, the King parties filed a complaint for declaratory relief against the Trustee in the instant adversary proceeding adversary number 24-00007. The one count complaint requests that this Court declare Serv Trust to have waived its right to appoint an alternative appraiser under the Goldsboro, LLC operating agreement by not doing so on or before September 11th, 2017, and declare that Serv Trust's interest in Goldsboro, LLC has been fully redeemed.

As the adversary case progressed, the King plaintiffs and the Trustee resumed settlement negotiations, and this latest round of negotiations ultimately proved to be fruitful. The parties agreed to a compromise and settlement subject to notice to creditors and approval by the Court. The proposed settlement includes four terms. First, the King parties will pay to the Trustee, for the benefit of the Debtor's bankruptcy estate, the sum of $150,000 to redeem the entirety of Serv Trust's interest in Goldsboro, LLC and settle the instant

adversary proceeding. The King parties and the Trustee confirmed during this week's hearing that they are asking this Court to approve a redemption and transfer of only the bankruptcy estate's interest in Goldsboro, LLC. They are not asking this Court to determine that the Debtor is the alter ego of Serv Trust, that Serv Trust assets are property of the Debtor's bankruptcy estate, or that the Trustee has the authority to administer the assets of Serv Trust.

The second term is that after the King parties pay $150,000 to the Trustee, the King parties and the Trustee will file a stipulation of dismissal in the instant adversary proceeding, dismissing all claims herein with prejudice. Third, the King parties will reimburse the Trustee for all reasonable legal fees and expenses that the Trustee incurs in connection with the litigation of any appeals taken by any party in the event that the Court grants the Trustee's settlement motion. And fourth, the King parties will withdraw their three claims filed in the Debtor's main bankruptcy case at claim numbers 21, 22, and 23. The King parties and the Trustee added this fourth term at the beginning of this week's hearing, so it is not included in the Trustee's settlement motion.

The standard for approval of the Trustee's settlement motion is well settled. Bankruptcy rule 9019-A provides that on the Trustee's motion and after notice and a hearing, the

Court may approve a compromise or settlement. To approve a settlement, the Court must consider four factors. First, the probability of success in litigation. Second, the likely difficulties in collection. Third, the complexity of the litigation involved and the expense, inconvenience, and delay necessarily attending it. And fourth, the paramount interest of the creditors. Those factors are set forth in in re: Essex Construction LLC 575 B.R. 648 at pages 652 to 53. That is a decision of the Bankruptcy Court for the District of Maryland, 2017. The factors are also set forth in in re: Bauman 181 B.R. 836 at page 843, also decided by the Bankruptcy Court for the District of Maryland in 1995.

It is not necessary for a bankruptcy court to conduct a mini trial or conclusively determine claims subject to a compromise. In re: Concept Housing Inc., 951 F. 2nd 932 at 939 out of the Eighth Circuit, 1991, and in re: Ashford Hotels Limited, 226 B.R. 797 at 802 out of the Southern District of New York, 1998. Nor is it necessary for the Court to find that the proposed settlement constitutes the best result obtainable. In re: Final Analysis, Inc. 417 B.R. 332 at pages 341 to 41 out of the Bankruptcy Court for the District of Maryland, 2009. Rather, the Court need only canvass the issues to determine that the proposed settlement does not fall below the lowest point of reasonableness. That's from the Final Analysis case. In doing so, the Court does not

substitute its judgment for that of the Trustee. In re: Bates 211 B.R. 338 at page 343 out of the Bankruptcy Court for the District of Minnesota, 1997.

The Court has canvased the issues here as directed by Final Analysis, and concludes that the proposed settlement does not fall below the lowest point of reasonableness. The Trustee has exercised sound business judgment in entering into the proposed settlement. The proposed settlement is in the best interest of the bankruptcy estate and all parties-in-interest, and the proposed settlement should be approved under Bankruptcy rule 9019-A. In the Trustee settlement motion and testimony, he provides ample support for the settlement. He analyzed and evaluated the King parties' redemption claim and the bankruptcy's potential -- bankruptcy estate's potential defenses, including those defenses and arguments that previously were asserted by Serv Trust during the litigation of the State Court case.

Based on this analysis and evaluation, the Trustee concluded that the estate has a dim likelihood of prevailing on the merits should the settlement not be approved and the redemption claim be tried. If the Trustee has to litigate the redemption claim, and the King parties are successful on the claim, Serv Trust's interest in Goldsboro, LLC will be declared to have been redeemed, rendering this asset completely worthless to the bankruptcy estate. The proposed

compromise and settlement, by contrast, allows the Trustee to obtain a significant recovery from the bankruptcy estate while limiting the estate's exposure to the further expenditure of attorney's fees and litigation costs, which cannot be understated, given the Debtor's propensity for frivolous litigation.

The Trustee described the formation of Goldsboro, LLC by the King parties, the key terms of its operating agreement, and the relationship between Goldsboro, LLC and Serv Trust. The operating agreement provides for the King parties, as class A members of the LLC, to put up almost all of the money needed to acquire the property and fund its development, while affording Serv Trust, the sole class B member of the LLC, a period of three years to make the project profitable or risk having its sweat equity redeemed by the King parties. Goldsboro, LLC ultimately purchased the property on July 18th, 2013 for $1.35 million.

Goldsboro LLC's operating agreement provides that if all governmental approvals needed to subdivide the property into at least 19 townhouse dwellings are not obtained by July 18th, 2016, and the class A members of Goldsboro, LLC do not elect to sell the property, the class A members may have the property appraised in accordance with the terms of the operating agreement. If the appraised value of the property is is found to be less than the monies invested by the class A

members, the class A members, the King parties, may cause Goldsboro, LLC to redeem the interests of the class B member, Serv Trust, in consideration of the company's prior distributions or other payments to the class B member.

The necessary government approvals to permit the development of 19 townhomes on the property were not obtained by July 18th, 2016, or at any time thereafter. The Debtor, meanwhile, had become more cash strapped as the project progressed, leading him to request that Mr. King contribute additional funds to Goldsboro, LLC, which could then be loaned to Serv Trust and in turn, to the Debtor personally to help him defray his ongoing personal expenses. Mr. King agreed and authorized Goldsboro, LLC to loan hundreds of thousands of dollars to Serv Trust, which then forwarded the funds to the Debtor and his wife.

On May 18th, 2015, in connection with the loan, Serv Trust executed a promissory note in favor of Goldsboro, LLC, while the Debtor executed a guaranty agreement in which he guaranteed Serv Trust repayment of the loans made by LLC. The Debtor did not list Goldsboro, LLC as an unsecured creditor when he filed his bankruptcy petition six months later, and this Court found that the Debtor made a knowing and fraudulent false oath justifying denial of the Debtor's Chapter 7 discharge under Section 727-A 4-A. That decision is reported as in re: Myers 2018 Westlaw 4701387. And again, that is a

decision out of this Court on September 28th, 2018.

I quote from that decision as follows: It is not believable that Mr. Myers simply forgot to include his largest unsecured creditor in the first of several versions -- in the first several versions of his schedules, when he had executed a personal guarantee in favor of that creditor six months prior to the filing for bankruptcy, and was requesting advances from the creditor up to and after filing his petition, end quote.

In September 2016, the King parties offered to purchase Serv Trusts class B interests for $2 million less repayment of the outstanding loan obligations Serv Trust owed to Goldsboro, LLC. These were the loans received by Serv Trust for the Debtor's personal benefit. The King Parties offer was memorialized in a memorandum of understanding, which required that the offer be accepted by September 12th, 2016, and if accepted, that closing occur not later than October 7th, 2016. According to the Trustee, Serv Trust did not accept the MOU by September 12th, 2016 and closing did not occur by October 7th, 2016. This is supported by the emails between Mr. King and the Debtor in January 2017, when the Debtor emailed a copy of an executed MOU to Mr. King claiming that Serv Trust had timely accepted the buyout offer, and Mr. King rejected the tender of the executed MOU.

The King parties then began the process set forth in

the operating agreement to cause Goldsboro, LLC to redeem Serv Trust's interests, which included a notice and appraisal process. In the subject adversary proceeding, the King parties claim that Goldsboro, LLC has redeemed Serv Trust's interests. The Trustee concluded, based on his review and analysis, and his 42 years' experience as a Chapter 7 Trustee, that the King parties will likely prevail on their claim. The Court finds this conclusion reasonable, given the facts here.

As advanced by the Trustee, it appears that the King parties properly invoked and followed the procedures set forth in the operating agreement. He testified that the King parties obtained an appraisal, and that there was no valuation dispute because Serv Trust did not appoint an appraiser or participate in the appraisal process. He also testified that he believed Serv Trust did not accept the buyout memorialized in the MOU, which expressly required that the offer be accepted by September 12th, 2016, and if accepted, that closing occur by October 7th, 2016.

Although the Debtor claims that he timely signed the MOU on September 12th, 2016 and mailed it -- emailed it to Mr. King -- or excuse me, and mailed it to Mr. King, the Debtor made no effort to draft closing documents and the emails between Mr. King and the Debtor in 2017 confirm that Mr. King did not receive an executed copy of the MOU by the due date.

Finally, and perhaps most significantly, the Trustee

testified that he does not have personal knowledge of what transpired among the King parties, Goldsboro, LLC, Serv Trust and the Debtor and therefore, would have to rely on the Debtor as a witness to prove the estate's defenses to the King parties' redemption claim. In fact, in cross-examining the Trustee, the Debtor appeared to consider it a victory that the Trustee admitted that he does not have personal knowledge and would have to rely on the Debtor's testimony to defend against the King parties' claim.

But as poignantly pointed out by the Trustee, the Debtor will have no credibility whatsoever as a witness with this Court or likely any other court. The Court need look no further than the Debtor's conduct during the hearing this week to conclude that it cannot trust a word that comes out of the Debtor's mouth. For example, notwithstanding entry of the alter ego order by the State Court, the Debtor repeatedly insisted that judgment has not been entered on the alter ego claim, even after the Court pointed him multiple times to the alter ego order, which is called a judgment in the title, and expressly states that judgment is entered on the alter ego claim. He still remains steadfast in his rantings that judgment has not been entered.

In addition, as stated earlier, in denying the Debtor a discharge, this Court found that the Debtor knowingly and fraudulently made a false oath, exhibited what the Court

called a cavalier attitude toward his sworn schedules, and demonstrated what the Court described as, quote, a reckless disregard for the truth sufficient to deny him a discharge, end quote. How can the Court trust any sworn testimony by the Debtor after these findings?

The Debtor's credibility is also belied by his prior conflicting testimony. And the Court refers the parties to the United States Trustee's pre-trial statement and adversary number 17-00193 at docket number 56, page 3, where the United States Trustee states, and I quote, at the meeting of creditors, Mr. Myers testified that the monies he and Kelly received from Serv Trust were distributions for the benefit of their children, who are beneficiaries of Serv Trust. At his 2004 examination, the Debtor testified that the monies he and Kelly received from Serv Trust were loans, not distributions, end quote.

The Court also directs the parties to the Court's memorandum opinion in that same adversary proceeding at docket number 94, page 21, where the Court states, and I quote, similarly, the line item for the Bethesda property in the amount $3,860.96 included on his first amended Schedule J conflicted with his 341 meeting testimony that he was not making any post-petition payments on that property either, end quote.

Furthermore, the Debtor's dilatory and abusive

litigation tactics are well known to the Court and are discussed in great detail in this Court's 101-page memorandum opinion entered on December 11th, 2023, in the Chapter 11 case filed by the Debtor's wife. As discussed in great detail in that opinion, the Debtor and his wife have exploited and subverted the bankruptcy process for more than what has now been ten years. In that decision, the Court found that they have exploited, manipulated, and abused the bankruptcy process to hinder and delay creditors from enforcing their security interests or otherwise pursuing their claims, all while forcing those same creditors to incur substantial legal fees to protect their interests in various state and federal courts.

The Court found that the Debtor and his wife subverted and perverted the bankruptcy and litigation processes, and abused, harassed, and harmed innocent creditors and parties in interest. The Court granted extraordinary relief in that decision, designed to protect creditors and other parties-in-interest from further bad faith conduct, obstruction, and harassment by the Debtor and his wife. The Debtor's past conduct has destroyed any credibility he would otherwise have with this Court.

To put it bluntly, the Court does not believe a word that is spoken or written by the Debtor. The record is replete with examples of the Debtor's inability and/or

unwillingness to be truthful. Moreover, the Debtor is belligerent, obnoxious, disrespectful, condescending, argumentative, aggressive, confrontational, antagonistic, pugnacious, combatant, and offensive. He mischaracterizes things, then demands that everyone accept his distorted and often outright false recitation of the facts and law.

His propensity for chaos and disrespect for the tribunal and parties is staggering. And he has demonstrated, on many occasions, his disgust and loathing for the Trustee. As both the Trustee and the Debtor pointed out, the Trustee does not have personal knowledge of the facts and therefore would have to rely on the Debtor's testimony. There is no way the Debtor will cooperate with the Trustee in defending against the redemption claim.

As discussed in great detail in this Court's December 11th, 2023 memorandum opinion entered in Ms. Kelly's case and in the June 11th, 2025 memorandum opinion entered in the Debtor's most recent failed bankruptcy case in the United States Bankruptcy Court for the District of Columbia, other courts have had similar experiences with the Debtor. The Trustee is effectively left unable to put on a defense to the King parties' claim. The only witness he has to rely on is the Debtor, and that is worse than having no witness at all. For all of these reasons, the Court concludes that the Trustee is unlikely to succeed if he were to litigate the redemption

claim with the King parties.

The Court will touch briefly, on the other factors for the Court to consider. First, the likely difficulties in collection. Even if the Trustee were to litigate the adversary proceeding and prevail at trial, there is no guarantee that the Trustee thereafter would be able to liquidate Serv Trust's interest in Goldsboro, LLC for more than what is being offered in the proposed settlement. Because Goldsboro, LLC is a private company, there is no readily accessible market in which the Trustee could liquidate Serv Trust's interests.

Furthermore, Serv Trust's interest still would be subject to the King parties' ability to invoke the appraisal process to force a redemption. In other words, even if, for example, the Trustee prevails on grounds that the King parties did not properly follow the appraisal procedures in 2017, the Trustee cannot prevent the King parties from triggering a new round of appraisals following a trial. Given that the current online Redfin valuation of the property is approximately $2 million, it is clear that Serv Trust's interest in Goldsboro will be at serious risk of redemption, even if the Trustee is successful at trial. This risk of redemption will make it extremely difficult, if not impossible, for the Trustee to market Serv Trust's interest to potential buyers. The difficulty in collecting any award makes the proposed

settlement the most attractive path to recovery for the Trustee.

Next, the Court must consider the complexity of the litigation involved and the expense, inconvenience, and delay necessarily attending it. The Trustee negotiated, as part of the proposed settlement, that the King parties will pay his legal fees relating to any appeals of the settlement order. The Debtor has demonstrated that he will seek reconsideration of and appeal every decision by this Court, and the bankruptcy estate has incurred an extraordinary amount of administrative expenses defending against the Debtor's multitudinous and frivolous appeals, none of which have proven successful.

It is eminently reasonable for the Trustee to assume that the Debtor will appeal the Court's order approving the settlement. To mitigate the expense to the estate, the Trustee convinced the King parties to bear responsibility for reimbursing the Trustee for all legal fees incurred in connection with the Debtor's inevitable appeal. The value of this provision to the estate cannot be understated. It ensures that the bankruptcy estate will reap the full benefit of the $150,000 settlement payment to be made by the King parties, as the estate will be insulated from the cost of litigating any appeals related to the settlement. Finally, the proposed settlement is in the best interest of creditors. By the settlement, the Trustee is bringing a significant sum

into the estate to pay allowed claims.

The Debtor raised several objections to the proposed settlement, and many of those objections were rejected by the Court in connection with the approval of the settlement procedures motion. I will address them in no particular order, but I will start with the objection to which the Debtor dedicated most of his testimony and argument.

First, the Debtor argues that the alter ego order has no force or effect because it is not a final judgment under Maryland Rule 2-602. It is unclear to the Court whether the alter ego order is, in fact, a final judgment. In it, the State Court entered judgment in favor of the King parties on the alter ego claim in Count II, and entered judgment in favor of the king parties on all claims asserted in Serv Trust's counterclaim. The King parties later dismissed Count I.

If the King declaratory judgment case and the Goldsboro breach of contract case were administratively consolidated, then the alter ego order very likely is a final judgment. If the two cases were substantively consolidated or consolidated for all purposes, then the alter ego order may not be a final judgment. But regardless of whether the alter ego order is a final judgment, it is still a valid judgment that is entitled to full force and effect. The lack of finality does not render the judgment null and void. The lack of finality means only that the judgment may be revised by the

issuing court until entry of a final judgment adjudicating all of the claims by and against all of the parties, or the judgment may be reversed by an appellate court.

Maryland Rule 2-602-A says that an order that adjudicates fewer than all of the claims in an action is not a final judgment, and is subject to revision at any time before entry of a final judgment. Section 12-101-F of the Courts and Judicial Proceedings Article of the Annotated Code of Maryland defines final judgment as, quote, a judgment, decree, sentence, order, determination, decision, or other action by a court from which an appeal may be taken, end quote.

As stated less than two weeks ago by the Appellate Court of Maryland, the purpose of Maryland Rule 2-602 is to prevent piecemeal appeals and the interruption of ongoing judicial proceedings. That comes from Haywood v Henry et al. 2025 Westlaw 1752308 at page 7. It was decided on June 25th, 2025, and cites to Sigma Reproductive Health Center v. State 297 Maryland 660 at page 665, a decision from 1983.

There is nothing to suggest that the purpose of the rule on final judgments is to determine when an order becomes effective. In contrast, Maryland Rule 2-601 A-4 actually provides that a judgment is effective when it is entered as provided in Maryland Rule 2-601-B. Again, Maryland Rule 2-601 A-4 provides that a judgment is effective when it is entered. Maryland Rule 2-601 B-2 provides, and I quote, the clerk shall

enter a judgment by making an entry of it on the docket of the electronic case management system used by that Court, along with such description of the judgment as the clerk deems appropriate, end quote.

Maryland Rule 2-601-D provides, and I quote, the date of the judgment is the date that the clerk enters the judgment on the electronic case management system docket, end quote. Applying Maryland Rule 2-601, the alter ego order is a judgment that was entered when it was docketed. That is January 12th, 2023. And became effective on that date. Nothing in Maryland Rule 2-601 limits its application to final judgments. Therefore, regardless of whether the alter ego order is a final order, it is still a valid and effective order unless and until it is revised by the State Court or reversed on appeal.

I want to be clear, even if this were not so, it would not impact the Court's approval of the proposed settlement because the Trustee is settling and transferring the bankruptcy estate's rights and interests with respect to Goldsboro, LLC, whatever those rights and interests may be. At the outset of the Court's ruling, the Court stated that it is not required to conduct a mini trial or conclusively determine the claims that are the subject of the compromise.

The sole issue for the Court is whether the proposed settlement falls below the lowest point of reasonableness. In

doing so, the Court does not substitute its judgment for that of the Trustee. The Court is not required to determine the validity and merits of the claims, and the Court is not required to define the rights and interests being settled and/or transferred. The Court is only approving a settlement and/or transfer with regard to the bankruptcy estate's rights and interests as to Goldsboro, LLC, whatever those rights and interests may be.

The Debtor's second argument is that the Court is violating the Rooker-Feldman Doctrine by considering a settlement premised on the alter ego order, but then he argues that the Court should not apply the alter ego order because it was incorrectly decided, and the State Court did not have jurisdiction to determine the alter ego claim. He has vacillated between these diametrically opposed arguments numerous times. The Court is not reviewing the alter ego order, and the Court is not relitigating issues decided by the State Court. The Court is simply applying the State Court's order because it is a valid order and a valid determination of the party's rights.

It is unclear to the Court whether the Debtor previously raised the argument that the State Court did not have jurisdiction to determine the alter ego claim in the State Court case, but there is nothing in the record to support this argument. The Debtor also argues that the State

Court incorrectly and improperly decided the alter ego claim, because Judge Lippe determined the Debtor's rights and Serv Trust in her September 28th, 2018 memorandum opinion denying him a discharge. This is belied by the fact that she entered an order abstaining from determining the alter ego claim four months later, on January 30th, 2019, in the Goldsboro adversary proceeding.

The Debtor also argues that the alter ego case was not properly remanded by the bankruptcy court for the Middle District of Florida to the State Court. That the Florida bankruptcy court stayed the litigation and therefore that the State Court did not have jurisdiction to determine the alter ego claim and enter the alter ego order. There is no evidence in the record whatsoever to support any of these contentions.

In addition, the Debtor argues that this Court does not have jurisdiction to approve the proposed settlement because the Court abstained. Once again, he mischaracterizes the facts. The Court abstained with regard to whether the Debtor is the alter ego of Serv Trust and whether Serv Trust's, assets or property of the bankruptcy estate. The Court is not deciding those issues today, and those issues have been decided already by the State Court. Today, the Court is deciding whether a settlement between the Trustee, as representative of the bankruptcy estate and the King parties, should be approved. The Court has not abstained with regard

to that issue and has jurisdiction to decide it.

The Debtor's third argument is that Serv Trust assets cannot be property of his bankruptcy estate because his bankruptcy estate was constituted on November 18th, 2015, when he filed his bankruptcy petition. He claims that anything that occurred after the petition date does not constitute property of his bankruptcy estate, and further argues that the State Court cannot order relief nunc pro tunc. Once again, the Debtor misinterprets, misapplies, and mischaracterizes the effect of the alter ego order.

The State Court determined on January 12th, 2023, that Serv Trust is, and as of November 18th, 2025, the petition date, was the alter ego of the Debtor. The State Court did not order relief nunc pro tunc. It simply determined the Debtor's rights and interests with respect to Serv Trust as of a specified date. His argument that a court cannot determine a party's rights as of a past date is nonsensical.

The Debtor's fourth argument is that approval of the settlement is not a core proceeding. The Debtor is incorrect, and the Court rejected this argument when the Debtor raised it in opposition to the settlement procedures motion. Approval of a settlement under Bankruptcy Rule 9019-A is a court proceeding under several paragraphs of Section 157-B-2 of Title 28 of the United States Code, including 2-A, which

addresses matters concerning the administration of the estate, 2-C, which addresses counterclaims by the estate against persons filing claims against the estate, 2-E, which addresses orders to turn over property of the estate, and 2-O, which addresses other proceedings affecting liquidation of assets of the estate.

The Court refers the parties to Wheatley v Wood in re: Wood 2021 Westlaw 3640612, which concluded that a motion to approve a settlement under Bankruptcy Rule 9019 is a court proceeding, and the Court has authority to enter a final order under 28 U.S.C. Section 157-B 2-A and O. The Court also refers the parties to in re: Junk 566 B.R. 897, at page 904, a decision issued by the Bankruptcy Court for the Southern District of Ohio in 2017, in which that court concluded that bankruptcy courts have Constitutional authority to enter final orders approving settlements under Bankruptcy Rule 9019. And finally, the Court refers the parties to in re: Full Spectrum Management, LLC, 621 B.R. 421 at page 424, a decision of the bankruptcy court for the Western District of Michigan 2020, which has the same holding as in re: Junk.

The fifth argument advanced by the Debtor is that the beneficiaries of Serv Trust are required to be joined as defendants in this matter. Again, the Debtor is incorrect, and the Court rejected this argument when the Debtor raised it in opposition to the settlement procedures motion. The

beneficiaries of Serv Trust are no longer beneficiaries of Serv Trust because pursuant to the alter ego order, Serv Trust is a disregarded entity, being the alter ego of the Debtor. Therefore, the named beneficiaries are not required to be joined as defendants in an adversary proceeding or named as respondents in any contested matter.

The time for the named beneficiaries to assert any rights to the assets of Serv Trust, or to otherwise intervene in the State Court case was prior to the State Court's determination that Serv Trust is the alter ego of the Debtor. Moreover, Serv Trust need not be in bankruptcy, and the fact that the Debtor was not a settlor or beneficiary is irrelevant, because Serv Trust has been determined to be the Debtor's alter ego, and Serv Trust's assets have been determined to be subject to administration by the Trustee as a legal representative of the bankruptcy estate under Section 323-A.

The Debtor's sixth argument is that the King parties do not have standing to appear in this Court. Again, the Debtor is incorrect, and the Court rejected this argument when the Debtor raised it in opposition to the settlement procedures motion. The Trustee filed the settlement motion to resolve claims and disputes between the bankruptcy estate and the King parties. Standing of the King parties is wholly irrelevant to the settlement motion. The Trustee, as the

administrator of the Debtor's bankruptcy estate, has standing to settle any claim held by or against the bankruptcy estate.

The Court refers the parties to Dimeglio v. Haines 1999 Westlaw 1489197 at page 2, a decision of the United States District Court for the District of Maryland on December 28th, 1999. In that case, the Court held that the bankruptcy Trustee succeeds to all causes of action held by the Debtor as of the petition date, and only the Trustee has authority to settle or release such claims. Nevertheless, the King parties became potential creditors of the Debtor upon entry of the alter ego order long after the claim's bar date. Therefore, the King parties have standing to assert any claims against the Debtor in this Court, and are irrefutably parties and interest to this proceeding.

The Debtor's seventh argument is that any claims filed by the King parties are untimely because they were filed after the claim's bar date. For the same reasons stated with regard to the last objection, the King parties became potential creditors of the Debtor only after entry of the alter ego order, which was years after the expiration of the claim's bar date, and the Court gave them an opportunity to assert their claims against the bankruptcy estate.

The Debtor's eighth argument is that the King parties are estopped from asserting any claims in this bankruptcy proceeding, because the bankruptcy court in the Middle

District of Florida sustained the Debtor's objection to their claims in his bankruptcy case there. However, the King parties asserted those claims before the State Court issued the alter ego order, which gave rise to the King parties' claims asserted in this bankruptcy proceeding. Again, the Court rejected this argument when the Debtor raised it in opposition to the settlement procedures motion.

The Debtors ninth argument is that the King parties do not have a monetary claim, and that their proofs of claim only assert equitable rights. Again, the Debtor is incorrect. The proofs of claim assert claims based on what the King parties describe as equitable and statutory claims as set forth in the adversary proceeding. The complaint in the adversary proceeding asserts a claim for declaratory relief. That is a claim. Section 105-A -- excuse me, 105 -- 1015 of the Bankruptcy Code says that the word claim means right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured, or a right to equitable remedy for breach of performance if such breach gives rise to a right to payment whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured and matured, disputed, undisputed, secured or unsecured.

It is well settled that the term claim is to be

broadly interpreted. In Johnson v. Home State Bank, 501 US 78, at page 83, the United -- decided in 1991, the United States Supreme Court stated, and I quote, Congress intended to adopt the broadest available definition of claim, end quote. It cannot be reasonably disputed that the King parties have a claim against the bankruptcy estate, and that this Court has jurisdiction over the allowance and disallowance of claims.

The Debtor's 10th argument is that Mr. Verstandig, counsel for the King parties, has a conflict of interest. This issue was not properly before the Court at this time. The Debtor waited until after the close of evidence on Tuesday, July 1st, the second day of the hearing on the Trustee's settlement motion, to file a motion to disqualify Mr. Verstandig. As the Court has told the Debtor numerous times, it will not consider pleadings filed on the eve of a hearing. It should be obvious that the Court will also not consider a pleading that is filed after the close of evidence.

In addition, the Debtor filed a handful of other motions after business hours on Friday, June 27th, which was the last business day before the hearing on the Trustee's settlement motion began and just minutes before the hearing began on Monday, June 30th. The Court understands that the Debtor even filed more pleadings in person this morning, even though he represented to the Court that he was not available today because he was going to be in Florida for a hearing.

The Court also understands that that the Debtor has insisted that the Court read them before giving its ruling. The Court hasn't and the Court won't. The Court has told the Debtor time and again it will not consider, prior to a hearing, pleadings filed on the eve of that hearing. Yet, he still waits until minutes prior to a hearing, or even in the middle or at the end of a hearing, to file pleadings that he could have filed days, weeks, months, or even years ago. The Court will address these motions in the ordinary course, after the Court has had an opportunity to review them, and if appropriate, parties and interests have had an opportunity to object.

The Court has a final comment and a question regarding the Debtor's objections to the proposed settlement. First, the comment. The procedural posture of this adversary proceeding is exactly what was contemplated by the Court and the parties when the Court entered its abstention order on January 30th, 2019, six and a half years ago, in the Goldsboro adversary proceeding. The abstention order specifically provided that the State Court could determine whether Serv Trust is the alter ego of the Debtor in connection with the King declaratory judgment case, and if such a determination was made, then the parties could come back to the bankruptcy court to determine a course of action.

The abstention order further stated, and I quote, if

the State Court determines that the automatic stay is applicable based on the relationship between the Debtor and Serv Trust, then the matter will be stayed and the parties can come back to this Court to figure out how to proceed, end quote. That's at page 4 of the abstention order.

This is exactly what has happened. The State Court determined that Serv Trust is the alter ego of the Debtor. So the parties are now back before this Court seeking authority to resolve the remaining redemption claim as contemplated by the abstention order. It has been a long road, and we are finally at the point at which the dispute with the King parties regarding the redemption claim, which the Court understands to be the final matter for administration by the Trustee, is being resolved.

And this leads to the Court's question. Why is the Debtor not embracing this settlement? The Court denied him a discharge, so he is going to remain personally liable for any claims that exist. Serv Trust and the Debtor have no viable defense to the redemption claim, and the Trustee negotiated a settlement that will bring $150,000 into the estate, and the estate will not have to bear the financial burden of the inevitable appeal by the Debtor. This is an extraordinary result for the bankruptcy estate. The Debtor stands to benefit greatly from this settlement.

Resolution of the dispute with the King parties

brings us all one giant step closer to completing the administration of the bankruptcy estate. Normally, the Court would say that it is astounded that someone is opposing this settlement, but it is par for the course with this Debtor. He has opposed most, if not all, of the Trustee's actions in this case, and he has appealed most, if not all, of this Court's orders. For reasons that are unclear to the Court, it is obvious that the Debtor's sole goal is to remain in bankruptcy as long as possible, and to inflict as much pain and hardship on his creditors and the Trustee as possible.

As previously discussed, the Court is not required to conduct a mini trial or find that the proposed settlement constitutes the best result obtainable. Even so the Court did in fact conduct a full two-day evidentiary hearing and fines, as a matter of fact, that the proposed settlement is indeed the best possible result for the bankruptcy estate and creditors. The Trustee has exercised good business judgment in entering into the proposed settlement, and the Court will not substitute its judgment for that of the Trustee.

For all of these reasons, the Court concludes that the overwhelming evidence is that the proposed settlement does not fall below the lowest point of reasonableness. The Trustee has exercised sound business judgment in entering into the settlement. The proposed settlement is in the best interest of the bankruptcy estate, and all parties-in-

interest, including the Debtor, and the proposed settlement, should be approved under Bankruptcy Rule 9019-A.

To the extent any of the Court's findings of fact constitute conclusions of law, they are adopted as such. And to the extent of the -- any of the Court's conclusions of law constitute findings of fact, they are so adopted. The Court will have a transcript of its ruling prepared and docketed for the convenience of the parties.

Mr. Mastro, the Court would like you to upload a proposed order granting the settlement motion and approving the settlement today simply saying --

MR. MASTRO: Yes, Your Honor.

THE COURT: -- for the reasons stated on the record at the hearing held today, the motion is granted, the settlement is approved and include the four terms. Again, the four terms are as follows: First, the King parties will pay to the Trustee, for the benefit of the Debtor's bankruptcy estate, the sum of $150,000 to redeem the entirety of the bankruptcy estate's interest in Goldsboro, LLC, and settle the instant adversary proceeding. Second, after the King parties pay $150,000 to the Trustee, the King parties and the Trustee will file a stipulation of dismissal in the instant adversary proceeding, dismissing all claims therein with prejudice.

Third, the King parties will reimburse the Trustee for all reasonable legal fees and expenses that the Trustee

incurs in connection with the litigation of any appeals taken by any party in the event that the Court grants the Trustee's settlement motion. And fourth, the King parties three claims filed in the main bankruptcy case at claim numbers 21, 22, and 23 are deemed withdrawn effective when the order becomes final and non-appealable.

As part of the settlement, the King parties are withdrawing their claims, claim numbers 21, 22, and 23. Therefore, the Court need not consider the Debtor's objections to those claims, and his objections to those claims are overruled as moot. That is the ruling of the Court.

MR. SCHLOSSBERG: Your Honor, very quick question. The obligation of the King parties to bear the expense of any appeals, I believe, was contemplated among the King parties' counsel and counsel for the Trustee to include any proceedings on motions for reconsideration.

May we so amend the order to that effect?

THE COURT: You may.

MR. SCHLOSSBERG: Thank you.

THE COURT: Any questions regarding the Court's ruling, Mr. Mastro, since you're drafting the order?

MR. MASTRO: No, Your Honor.

THE COURT: All right. Thank you.

MR. MASTRO: Understood.

MR. SCHLOSSBERG: Thank you.

THE COURT: The Court appreciates everyone's time. And again, the Court sincerely apologizes for the technology fail earlier today. Again, the Court will prepare -- we'll have prepared a transcript of its ruling, and the Court will docket it on the case docket as soon as it is ready. Thank you all for your time.

MR. SCHLOSSBERG: Thank you.

MR. VERSTANDIG: Thank you.

MR. MASTRO: Thank you.

MR. SCHLOSSBERG: Good weekend.

THE CLERK: Court is now adjourned.

(Whereupon these proceedings were concluded.)

CERTIFICATION

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.



July 13, 2025

DIANA DODSON DATE

TTA-Certified Digital Legal Transcriber CDLT-134